# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JEROME (NMI) BENNETT,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:04-cv-2714-RDP |
| } | |
| **CARI M. DOMINGUEZ, Chairwoman,** } | |
| **Equal Employment Opportunity** } | |
| **Commission,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

The court has before it Plaintiff's Motion for Partial Summary Judgment (Doc. # 26) filed October 26, 2005, and Defendant's Motion for Summary Judgment (Doc. # 33) filed November 15, 2005. The motions have been fully briefed[1] and were under submission, without oral argument, as of December 27, 2005. (Docs. # 13, 41).

---

[1] On October 26, 2005, Plaintiff, who is proceeding *pro se* in this matter, filed his motion for summary judgment, statement of undisputed material facts, supporting brief, and evidentiary submission. (Docs. # 26, 27). On November 15, 2005, Defendant filed a response to Plaintiff's statement of undisputed material facts, a cross motion for summary judgment, and a brief (in support of its motion for summary judgment and in opposition to Plaintiff's motion). (Docs. # 32, 33, 34). Defendant also filed a multi-volume evidentiary submission. (Docs. # 35, 36, 37). On November 29, 2005, Plaintiff filed a response in opposition to Defendant's motion (Doc. # 38), a reply brief in support of his motion for summary judgment and in opposition to Defendant's motion (Doc. # 39), and additional evidence. (Doc. # 40). Although the court's summary judgment briefing schedule provides for an additional reply brief by Defendant in support of its motion for summary judgment (Doc. # 13, Exhibit A), Defendant has informed the court, through counsel, that it has elected not to file an additional brief. Accordingly, briefing on the motions is complete.

Plaintiff has brought suit against the Equal Employment Opportunity Commission ("EEOC")[2] under the Rehabilitation Act of 1973, which generally prohibits federal government employers from discriminating on the basis of disability.[3] 29 U.S.C. § 701, *et seq*. Although Plaintiff's complaint lists five counts, he essentially asserts three claims: (1) Defendant discriminated against him on the basis of disability when he was not selected for one of eight EEO investigator positions filled in the Birmingham EEOC office in 1999; (2) Defendant violated the pre-employment disability inquiry prohibition of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(d)(2) (incorporated by reference in the Rehabilitation Act), by requesting information documenting Plaintiff's veteran status; and (3) Defendant violated the confidentiality provisions of § 12112(d)(3) by disclosing to the selection panel Plaintiff's status as a disabled veteran.

I.      **Legal Standards for Evaluating a Summary Judgment Motion**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a

---

[2] Because Plaintiff's claims essentially are alleged against the EEOC and not Ms. Dominguez personally (who is technically the named defendant by statute only), the court will refer to the Defendant in the neuter, not the feminine. Although Plaintiff's initial complaint also named as a defendant Fannie Thomas, a Personnel Officer in the EEOC Birmingham office (Doc. # 1), Plaintiff's Amended Complaint alleges claims only against Cari M. Dominguez, Chair of the EEOC. (Doc. # 8).

[3] Although Defendant's Amended Complaint also alleges racial discrimination in violation of Title VII, that claim was dismissed at Plaintiff's request. (Docs. # 28, 29).

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).[4]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the

---

[4] In this case there is no direct evidence of discrimination. The Eleventh Circuit has held that disparate treatment claims based on disability are analyzed under the traditional *McDonnell Douglas* analysis. *Wascura v. City of South Miami*, 257 F.3d 1238 (11th Cir. 2001).

decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02. The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

## II.     Relevant Undisputed Facts[5]

In 1999, Defendant's Birmingham District office posted a Vacancy Announcement for EEO Investigator positions which identified four criteria used to evaluate an applicant's qualifications for the jobs at issue, including the "ability to communicate in writing." (Doc. # 35, Ex. 1, Vacancy Announcement). The Announcement indicated that the positions were open both to applicants under a competitive merit-promotion process and to those individuals entitled to non-competitive appointment under hiring authorities such as the Veteran's Readjustment Appointments ("VRA"),[6] the Outstanding Scholar Program, or a special authority allowing veterans with disability ratings of 30% or more to be selected on a non-competitive basis.(Doc. # 35, Ex. 1). When an announcement such as the one issued in this case is open to both competitive and non-competitive applicants, the selecting official has the discretion to choose from any of the applicants, whether they be competitive or non-competitive eligible. (Doc. # 36, Ex. 5, Pierre, 175-77).

---

[5] If facts are in dispute, they are stated in the manner most favorable to the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[6] "Veterans Recruitment Appointment" is a special hiring authority under which a federal agency can, if it wishes, appoint an eligible veteran through a non-competitive appointment. 38 U.S.C. § 4214; 5 C.F.R. § 307. (Doc. # 35, Ex. 3, copy of Office of Personnel Management's website information regarding special appointing authorities for veterans).

All applicants seeking VRA status or other special consideration were instructed to submit documentation verifying their eligibility requirements. (Doc. # 35, Ex. 1). Applicants were advised that they "d[id] not have to request noncompetitive consideration." (Doc. # 35, Ex. 1). However, they were assured that "[a]ny disability-related information provided w[ould] be kept confidential in accordance with law and regulations." (Doc. # 35, Ex. 1).

Plaintiff applied for one of the investigator positions. (Doc. # 35, Ex. 2, Plaintiff's Application). In his application, Plaintiff requested that he be considered eligible for the position on a non-competitive basis under both the VRA authority and the "30% or more Disabled Veterans Hiring Authority." (Doc. # 35, Ex. 2, at cover letter dated March 3, 1999, and at Bates Stamp number 000324A). Thereafter, Plaintiff was deemed by the personnel office as eligible for the position as a non-competitive candidate, and his name was placed on the VRA eligible candidates list. (Doc. # 36, Ex. 6, list of VRA eligible candidates; Doc. # 36, Ex. 7, notice of non-selection; see also, Doc. # 35, Ex. 4, Gosa, 545-546).[7]

At the time of his application, Plaintiff was not a federal employee but had previous federal civil service employment as a Commissary Store Manager and as a Management Assistant. (Doc. # 35, Ex. 2, at Bates number 000311). Plaintiff also had previous military service. (Doc. # 35, Ex.

---

[7] Plaintiff also requested that he be considered on a competitive basis and be given the ten-point veteran's preference provided under 5 U.S.C. § 2108. (Doc. # 35, Ex. 2, at cover letter dated March 3, 1999, and at Bates number 000307). However, to be eligible for a competitive selection under the announcement at issue, an applicant must be a current federal employee or be "reinstatement eligible." Plaintiff was not a current federal employee, nor was he reinstatement eligible since he had not completed his service requirement for career tenure. (See Doc. # 35, Ex. 2, p.5, Box 24; see also 5 C.F.R. § 315.401(b)). In any event, because Plaintiff was placed on the list of eligibles due to his VRA eligibility, it is of no consequence whether Plaintiff was eligible for competitive consideration. As a candidate on the eligibles list, Plaintiff was considered along with all of the other competitive and non-competitive candidates.

2, at Bates number 000307). For the eight years immediately prior to his application, Plaintiff was owner/operator of a personal care home and was not employed in government service. (Doc. # 35, Ex. 2, Bennett employment application).

### A.   The Decision Not to Select Plaintiff

The Agency's District Director in Birmingham, Cynthia Pierre, was the final selecting official for the investigator positions at issue in this case. (Doc. # 35, Ex. 4, Pierre, 34-36; Doc. # 36, Ex. 5, Pierre, 32-33). One hundred forty-six (146) applications were received for those positions. (Doc. # 35, Ex. 4, Pierre, 57; Doc. # 35, Ex. 14, list of applicants). The applications were initially reviewed by the personnel officer, Fannie Thomas, to determine if the applicants met minimum qualifications under either a competitive/merit promotion basis or a non-competitive basis. (Doc. # 35, Ex. 4, Pierre, 56-59).

After Thomas determined which of the applicants met the minimum qualifications, the eligible applications were sent to two panels to make hiring recommendations to Pierre – one panel reviewed and ranked the competitive applicants pursuant to a crediting plan applicable to merit promotion candidates, and one panel reviewed and evaluated the non-competitive applicants (hereinafter the "panels" or "panel").[8] (Doc. # 36, Ex. 5, Pierre, 17-19; see also, Doc. # 35, Ex. 4, Pierre, 40-60, 74). Although Pierre ultimately selected the successful candidate for the positions at issue, the panels were empowered to review, evaluate, and recommend to Pierre the best applicants.

---

[8] Although competitive applicants are scored and ranked, non-competitive applicants are not "scored" and thus are not evaluated under the crediting plan. (Doc. # 36, Ex. 5, Pierre, 19-20). The eligible applicants were identified in three separate lists: (1) the competitive, merit promotion eligible applicants; (2) the VRA and Schedule A applicants (non-competitive); and (3) the Outstanding Scholars applicants (also a non-competitive list).

(Doc. # 36, Ex. 5, Pierre, 17-19). Pierre only considered the applicants who were recommended to her. (Doc. # 35, Ex. 4, Pierre, 149-50; Doc. # 36, Ex. 5, Pierre, 111).

As a non-competitive VRA candidate, Plaintiff's name was forwarded by Thomas to the non-competitive panel. (Doc. # 36, Ex. 6; Doc. # 35, Ex. 4, Pierre, 58-59). The four members of the panel who reviewed the non-competitive applicants discussed among themselves the experience and education of the applicants (Doc. # 35, Ex. 4, Hall, 358-60; Doc. # 35, Ex. 4, Gosa, 586-601), and recommended to Pierre a total of eight applicants from the non-competitive lists, including two (Kevin Aldridge and Manuel Valenzuela) from the VRA and Schedule A list of which Plaintiff was a part. (Doc. # 35, Ex. 15, list of non-competitive eligible applicants recommended by panel to Pierre).

The panel did not recommend Plaintiff. (Doc. # 36, Ex. 5, Pierre, 71; Doc. # 35, Ex. 4, Gosa, 586-601; Doc. # 35, Ex. 15, list of recommendations sent to Pierre). Plaintiff's application contained numerous errors in sentence structure, spelling, and grammar. (See Doc. # 35, Ex. 2, Bennett employment application). Panel member Gosa testified that the ability to write clearly was one of the primary qualifications he considered in reviewing the applications (Doc. # 35, Ex. 4, Gosa, 522), and he found that Plaintiff's application "jumped out at him" due to poor grammar, spelling, and sentence structure. (Doc. # 35, Ex. 4, Gosa, 545-46, 586-87, 593-94, 596-99, 601). Gosa testified that he commented on Plaintiff's poorly written application to the other panel members, and at one point during the review process commented to the other panel members that Plaintiff was "a f–king illiterate." (Doc. # 35, Ex. 4, Gosa, 596-99). Panel member Files testified that one of the primary responsibilities of an EEO investigator is to prepare written reports, and that based on the errors in Plaintiff's application, he questioned Plaintiff's written communication skills. (Doc. # 35, Ex. 4,

Files, 320-23). Panel members Hall and Kennedy testified that Plaintiff did not have current investigative experience as compared to Aldridge, the VRA applicant whom the panel recommended. (Doc. # 35, Ex. 4, Hall, 393-394; Doc. # 35, Ex. 4, Kennedy, 494). On May 5, 2000, Plaintiff received notification that he was not selected by Defendant for the EEO investigator position. (Doc. # 36, Ex. 7).

Manuel Valenzuela, an applicant on the same non-competitive list as Plaintiff, was a "Schedule A" applicant, which, like VRA, is a type of special hiring authority for disabled veterans. (Doc. # 36, Ex. 6; Doc. # 35, Ex. 4, Pierre, 77-81). Valenzuela applied for the position based on a "30% or more" disability rating from the VA. (See Doc. # 36, Ex. 6; Doc. # 36, Ex. 5, Pierre, 42-43; Doc. # 35, Ex. 4, Pierre, 77-81; Doc. # 36, Ex. 8, reconstructed portions of Valenzuela application).[9] The panel recommended Valenzuela to Pierre, who offered him one of the positions, which he declined. (Doc. # 36, Ex. 6, list of eligible applicants; Doc. # 35, Ex. 15, list of eligible applicants recommended by the panel to the selecting official; Doc. # 35, Ex. 4, Pierre, 77-81, 88, 92, 96-99; Doc. # 36, Ex. 5, Pierre, 32).

Four investigator positions were initially filled under the vacancy announcement, and subsequently four more positions were filled in the Birmingham office under the same

---

[9] Valenzuela's actual application was lost prior to the administrative process in this case. Pierre testified she recalled Valenzuela applied under a Schedule A special hiring authority based on his disability rating. (Doc. # 35, Ex. 4, Pierre, 79-81). The list prepared by Thomas also shows Valenzuela as Schedule A-eligible. (Doc. # 36, Ex. 6). Regardless of whether the administrative record contains the actual documents submitted by Valenzuela for the selection at issue, there is no dispute that the panel was made aware that Valenzuela was disabled by the fact that he was listed as Schedule A-eligible.

announcement after the agency received an increase in its hiring authority. (Doc. # 36, Ex. 5, Pierre, 27-29).[10]

### B.     Plaintiff's Claims

On June 19, 2000, Plaintiff filed a formal administrative complaint against Defendant alleging he was discriminated against on the bases of race (African-American), color (black), age (DOB 12-24-58), and mental and physical disability (Mental: post-traumatic stress disorder, anxiety and depression; Physical: rheumatoid arthritis multiple joints).[11] An administrative hearing on Plaintiff's EEO complaint was conducted, and the Administrative Judge ("ALJ") issued a decision finding no discrimination on April 10, 2002. (Doc. # 35, Ex. 10, EEO Decision).[12] Plaintiff timely appealed the ALJ's decision to the Agency's Office of Federal Operations (Doc. # 35, Ex. 11, June 5, 2002, acknowledgment of appeal and Plaintiff's submission of June 18, 2002 regarding appeal

---

[10] Selections were made from the list of recommendations from both the competitive applicant list and the non-competitive applicant list. While eight positions were filled, offers were made to at least ten applicants because some of the initial selectees declined to accept the job offers. (Doc. # 36, Ex. 5, Pierre, 27-29; see also Doc. # 35, Ex. 18, list of competitive eligible applicants referred to selecting official).

[11] Plaintiff later amended that complaint to also allege that Defendant wrongfully failed to certify him as a competitive applicant and give him a ten point veterans preference. (Doc. # 36, Ex. 9, EEO Complaint with amendment). Plaintiff's complaint in this case does not raise any issue regarding the Agency's decision not to certify him as a competitive applicant and give him a ten point veterans preference in the competitive process.

[12] The ALJ's decision found that Plaintiff was not discriminated against based on his race, age, or disability when the ranking panel did not refer him for interview or selection for the investigator position, and that Plaintiff was not discriminated against based on his race, age or disability "when, in connection with his non-selection, his reinstatement eligibility as a former civil service employee and his rights under the Veterans Readjustment Act (VRA) (30% or more disabled veteran appointment) were not considered," nor "when his application was not considered under the competitive process and he was not awarded a 10 point veteran's preference under OPM standards." (Doc. # 35, Ex. 10, EEO Decision, p. 3).

issues), but that appeal was denied. (Doc. # 35, Ex. 12). Plaintiff's request for reconsideration of the denial of his appeal also was denied. (Doc. # 35, Ex. 13).

Plaintiff filed his initial judicial complaint on March 18, 2004, and filed his last amended complaint on December 2, 2004. (Docs. # 1, 8). Plaintiff's complaint now raises only claims under the Rehabilitation Act of 1973.[13] (Doc. # 8).

## III. Rehabilitation Act Discrimination Claim

Plaintiff first claims that he was not selected for an EEO investigator position because of his disabilities.[14] In order to present a *prima facie* case of discrimination under the Rehabilitation Act, Plaintiff must show that he is disabled within the meaning of the Act; is otherwise qualified for the position in question; and was adversely treated because of his disability. *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999); *Jackson v. Veterans Administration*, 22 F.3d 277, 278 (11th Cir. 1994). The court will assume, without deciding, that Plaintiff has established a *prima facie* case under the Rehabilitation Act. Nonetheless, the court finds that summary judgment in favor of Defendant is appropriate on this claim because Defendant has presented legitimate, non-discriminatory reasons for the decisions at issue which Plaintiff has not shown are pretexual.

---

[13] On December 2, 2004, Plaintiff amended his complaint and in doing so dropped his claims of race, color, and age discrimination as raised during the administrative proceeding.

[14] Although Plaintiff also asserts that he was not interviewed by Pierre when Defendant received additional hiring authority and filled four more investigator positions, the undisputed evidence indicates that the selection panel already had removed Plaintiff from consideration by the time that additional applicants were selected. (Doc. # 36, Ex. 5, Pierre, 71). Plaintiff's claim that the selection process itself was unfair is equally unpersuasive. Even assuming, as Plaintiff argues, that the selection process was unfair, not within guidelines, or otherwise flawed, the unfairness of the selection process is not probative of discrimination on the basis of Plaintiff's disabilities.

The undisputed evidence indicates that, although Plaintiff's name was submitted to a selection panel of reviewers as an eligible non-competitive VRA applicant for the EEO investigator positions at issue, the panel members observed Plaintiff's usage of improper grammar and spelling errors in his application and, because of his numerous errors, elected not to recommend Plaintiff for a position. (Doc. # 36, Ex. 5, Pierre, 71; Doc. # 35, Ex. 4, Gosa, 522, 586-601; Doc. # 35, Ex. 4, Files, 320-23; Doc. # 35, Ex. 15, list of recommendations sent to Pierre). Although Pierre ultimately made the decision about who to hire for the available positions, Pierre testified that the ability to write well was important to her selection and that therefore, even if the panel had referred Plaintiff, she would not have selected him due to the errors in his application. (Doc. # 36, Ex. 5, Pierre, at 113-19). Plaintiff apparently does not dispute that his application contained errors, and an independent review of the document confirms that it contains obvious and extensive errors in grammar and spelling – errors which are not present in the applications submitted by the individuals who were recommended by the panel. (*Compare* Doc. # 35, Ex. 2 *with* Doc. # 37, Ex. 16). It is also undisputed that the Vacancy Announcement specifically identified the "ability to communicate in writing" as one of the four criteria to be used for making selections. (Doc. # 35, Ex. 1, Vacancy Announcement).

Plaintiff attempts to show pretext by claiming that Defendant discriminated against all disabled applicants and, in support of that argument, asserts that none of the VRA applicants were interviewed or hired. Plaintiff's contention is simply not consistent with the record evidence. The undisputed evidence demonstrates that the panel did recommend one of the VRA applicants, Kevin

Aldridge,[15] and it also recommended Valenzuela, who, like Plaintiff, applied as a "30% or more" disabled veteran. (Doc. # 35, Ex. 15, list of non-competitive eligible applicants recommended by panel to Pierre). In fact, Valenzuela ultimately was offered a position, but he declined the offer. (Doc. # 36, Ex. 6, list of eligible applicants; Doc. # 35, Ex. 15, list of eligible applicants recommended by the panel to the selecting official; Doc. # 35, Ex. 4, Pierre, 77-81, 88, 92, 96-99; Doc. # 36, Ex. 5, Pierre, 32).

The court finds that Plaintiff has not adduced sufficient evidence to lead a reasonable factfinder to conclude that Defendant's reason for not selecting Plaintiff for an EEO investigator position was pretextual. Accordingly, Defendant's motion for summary judgment is due to be granted as to Plaintiff's disability discrimination claim.

## IV.   § 12112(d)(2) Pre-Employment Inquiry Claim

Plaintiff also alleges that the provisions of § 12112(d)(2) were violated when he was required to submit with his application documentation to demonstrate his eligibility for veterans' preferences. In applying for the position at issue, Plaintiff requested that he be considered as a non-competitive applicant based on his VA disability rating under both the VRA authority and the "30% or more Disabled Veterans Hiring Authority" (Doc. # 35, Ex. 2, at cover letter dated March 3, 1999, and at Bates Stamp number 000324A), and in support of those designations, he furnished a letter from the Department of Veteran's Affairs confirming his service-connected disability and Standard Form 15

---

[15] Aldridge was not hired because Pierre was not impressed with Aldridge's application and had the following concerns: (1) the use of his employer's letterhead for the cover letter he submitted with his application, which she believed demonstrated poor judgment; (2) his frequent change of jobs; and (3) grammatical and spelling errors in his application. (Doc. # 35, Ex. 4 at 60-66; Doc. # 37, Ex. 16).

identifying his VA disability rating. (Doc. # 35, Ex. 2). For the reasons outlined below, the court finds that Defendant's actions did not violate § 12112(d)(2).

Section 12112(d)(2)(A) provides, in pertinent part, that an employer "shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability." 42 U.S.C. § 12112(d)(2)(A). The court has serious doubts that the information required by Defendant in this case even falls within the parameters of § 12112(d)(2)(A). The only information required by Defendant was supporting documentation from the VA showing that an applicant seeking VA preferences, or eligibility for any non-competitive appointment, was eligible for such preference.[16] There was no requirement for a pre-employment medical exam, nor was there any requirement that Plaintiff submit information regarding the specific nature of his disabilities.

Regardless, it is clear that it was up to Plaintiff to decide whether or not he wanted to submit any information about his disabilities – it was not a forced disability "inquiry" as contemplated by the statute. While applicants seeking VRA status or other special noncompetitive consideration were instructed to submit documentation verifying their eligibility requirements (Doc. # 35, Ex. 1), applicants were advised that they "d[id] not have to request noncompetitive consideration." (Doc. # 35, Ex. 1). It was Plaintiff's choice – not Defendant's mandate – to submit disability

---

[16] Plaintiff also complains that he, like every other applicant (regardless of disability preference), was required to submit Form SF-50 to prove his reinstatement eligibility for the positions at issue. Plaintiff challenges the requirement of Form SF-50 because his form happened to reference the reason for his resignation as "returning to States for medical reasons to undergo reconstructive surgery." (Doc. # 35, Ex. 2). The court finds that even though Plaintiff's form may have included some medical information, the general requirement that applicants submit documentation of reinstatement eligibility does not constitute a "disability inquiry" within the meaning of § 12112(d)(2).

13

documentation. Ironically, the information that Plaintiff now complains he was required to submit is the very information which gave him an advantage during the selection process he otherwise would not have been afforded. In fact, had Plaintiff not submitted his application showing he was eligible for the VRA or Schedule A appointment, he would not have been among the group of eligible applicants as he did not qualify for a competitive selection.

The case of *Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000) is instructive on this claim. In *Cash*, Defendant Smith told other employees at Plaintiff Cash's place of business that she had diabetes. *Cash*, 231 F.3d at 1307. Cash, just as Plaintiff in this case, argued that 42 U.S.C. § 12112(d) (in conjunction with 29 C.F.R. § 1630.14) creates a private cause of action for disclosure of medical information.[17] *Cash*, 231 F.3d at 1307. The Eleventh Circuit held:

> The statute enumerates the situations in which an employer may require an employee to submit to a medical examination, *see* 42 U.S.C. § 12112(d), and the regulation states that the results of any such examination shall be considered confidential, *see* 29 C.F.R. § 1630.14(c)(1). In this case, the disclosure that Cash complains of was not of the result of an examination ordered by APCO, but of a voluntary disclosure that Cash made to Smith. The statute and regulation cited by Cash do not govern voluntary disclosures initiated by the employee, and therefore the district court correctly granted APCO's motion for summary judgment on this count.

*Cash*, 231 F.3d at 1307-08. As in *Cash*, Plaintiff's voluntary disclosure of disability information is not governed by § 12112(d)(2), and therefore summary judgment in favor of Defendant is due to be granted on this claim.

---

[17] The Eleventh Circuit noted that it "need not decide whether the sections [Plaintiff] refers us to do in fact create a cause of action, because, on their face, they do not apply to the facts of this case." *Cash*, 231 F.3d at 1307.

## V.     § 12112(d)(3) Violation of Confidentiality Claim

Plaintiff also claims that the confidentiality provisions of § 12112(d)(3) were violated when the same disability information submitted by Plaintiff in support of his special non-competitive status was forwarded with his application from the personnel office to the selection panel.[18]  For the reasons outlined below, the court finds Defendant is also due summary judgment on this claim.

Section 12112(d) references confidentiality of medical information only twice.  The first reference to confidentiality, § 12112(d)(3)(B), applies only to "medical examinations after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties...."  The second reference, § 12112(d)(4)(c), merely incorporates the confidentiality provision of § 12112(d)(3)(B), and applies to "employees."  In this case, because Plaintiff was neither a "job applicant to whom an offer had been made," nor an "employee" at the time of the alleged violation, the confidentiality provisions of the statute are not applicable.

In any event, the holding in *Cash* also pretermits this claim.  As noted by the Eleventh Circuit, because the "disclosure that [Plaintiff] complains of was not of the result of an examination ordered by [Defendant], but of a voluntary disclosure that [Plaintiff] made to [Defendant]," § 12112(d) does not apply. *Cash*, 231 F.3d at 1307-08.  Accordingly, summary judgment in favor of Defendant is due to be granted on this claim as well.

---

[18] Although Defendant argues that "[i]t remains unclear whether the cover letter and other documents regarding Plaintiff's VA disability rating were included in the documents made available to the panel," (Doc. # 34, at 21n.22), the court will assume for purposes of summary judgment that the panel reviewed all of the documentation submitted by Plaintiff in his application.

**VI.    Conclusion**

For the reasons stated above, the court finds that Defendant's motion for summary judgment is due to be granted and Plaintiff's motion for summary judgment is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this ___23rd___ day of January, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE